168 So. 561

**ALEXANDER et al. v. BOND BROS.**

8 Div. 690.

Supreme Court of Alabama.

April 16, 1936.

Rehearing Denied June 11, 1936.

Wm. L. Chenault, of Russellville, for appellants.

Julian Harris and Norman W. Harris, both of Decatur, for appellee.

BROWN, Justice.

Bill by contract creditor filed against the debtor and five of his daughters to cancel as fraudulent a deed of conveyance executed by the debtor and his wife to said daughters, on April 21, 1932, to certain lands described in the bill and subject the same to the payment of complainant's demand.

The facts alleged in paragraphs 2 and 3 of the bill as amended, as the basis of the complainant's claim, are, that on the 13th day of June, 1930, complainant purchased from the defendant Jake Alexander "all of the merchantable timber (cedar excepted) on certain land situated in Lawrence county (approximately 2,300 acres) paying the said Jake Alexander the sum of $3,200.00 therefor. On said day Jake Alexander, joined by his wife Sallie B. Alexander, executed and delivered to complainant a deed to said timber," with general covenants of warranty, including the covenant that the land was free of encumbrance; that at the time of the execution of said deed 820 acres of the land specifically described and the timber thereon were encumbered by a vendor's lien reserved by the grantor of Alexander —one Stout—in the face of the deed executed by Stout to said Alexander; that "a large part of the consideration for said deed (the purchase money due from Alexander to Stout), to-wit: $8,000.00, has never been paid and complainant's right to the timber on the land hereinbefore described has been and is now subject to the prior and paramount claim of the said Stout by virtue of said vendor's lien"; that in the year 1931, Stout filed a bill in the circuit court, in equity, Lawrence county, against Alexander to enforce said lien, obtained a decree therein, under which the lands were sold and purchased by Stout:

Paragraph 4 of the bill avers that as a consequence of said breach of warranty the complainant was damaged in the sum of $2,000, for which said Alexander is indebted, and which is now due.

The defendant Alexander, in his answer, denied the averments of paragraphs 3 and 4; denied the alleged indebtedness to complainant; admitted the execution of the deed to his daughters for a considera-

tion of $10,000, alleging that he was, at the time, "indebted in the sum of several hundred dollars to his children named in" the bill, and the balance of said consideration was thereafter paid by his daughters. He also alleges in his answer that "there was but little merchantable timber on said land"; that plaintiff, through his agents, "contracted with this defendant for the purchase of the merchantable timber, 10 inches and up, on April 21, 1932, on the lands described in Paragraph Five of said bill (the lands which he conveyed to his daughters), and in writing up the deed or contract for the purchase of said timber said agents included therein a description of the land described in Paragraph Three of said bill (the Stout tract). * * * that the merchantable timber, 10 inches and up, on what is known as 'The Stout Land' was of little or no value, and this was known to the complainant and its agents at the time said deed was executed."

Alexander amended his answer making it a cross-bill, alleging therein that he only sold to the complainant the timber suitable for cross-ties, 10 inches in diameter and upward; that complainant cut and removed a thousand or more trees under 10 inches to his damage in the sum of $1,000; that complainant damaged a valuable spring on his land by allowing sawdust to accumulate therein so as to impede the flow of the water therefrom.

The daughters filed a separate answer in which they neither deny nor admit the averments of paragraphs 2, 3, and 4 of the bill. They admit the execution of the conveyance by their father and mother to them; allege the consideration therefor was $10,000; deny that the consideration was fictitious. Their answer further avers "that they had loaned to their father several hundred dollars to be used by him in his farming operations. They aver that their father was, and is an extensive farmer, and that during the last several years that the country has been in a period of financial depression, and to assist their father in paying his obligations and debts, and in furthering his farming operations they loaned to him money from time to time, which sums aggregated several hundred dollars on April 12, 1932. The respondent, Jake Alexander, was unable to repay them and needed more money from time to time in the management of his business, and on, to-wit, April 21, 1932, he sold to these respondents the lands described in Paragraph Five of said bill at and for the sum of Ten Thousand ($10,000.00) Dollars. The money which the respondent, Jake Alexander, owed these respondents at the time of the execution of said deed was and became a part of the consideration for said deed. In the sale of said property these respondents agreed to pay to the respondent, Jake Alexander, in cash the balance of the consideration of Ten Thousand ($10,000.00) Dollars expressed in said deed, and thereafter and before the filing of this bill they did pay to the said Jake Alexander the balance in full of the consideration for said deed and said land, making the full consideration paid by these respondents to the said Jake Alexander the sum of Ten Thousand ($10,000.00) Dollars."

The only assignments of error argued in brief are those predicated on the final decree.

The evidence shows without dispute the sale and conveyance of the timber on the 2,300 acres by Alexander to the complainant, the general warranty of the right to sell and convey and that the same was unencumbered; that the timber on the Stout tract was encumbered by a vendor's lien; that Stout accomplished a sale of said land under a decree of the circuit court, ascertaining the amount due at $5,000, and became the purchaser thereof. The complainant also offered evidence showing the value of the "merchantable timber" on the Stout tract to be from $800 to $1,200, at the time of the purchase and conveyance of the timber by Alexander to the complainant.

The defendants offered countervailing evidence as to the quantity and value of the timber on the Stout tract, and also offered evidence going to show that timber was cut from the entire tract that measured under 10 inches.

The defendants' evidence shows that Alexander owned practically no personalty; that the land which he conveyed to his daughters was encumbered by a mortgage held by his brother, and the other lands claimed by him were encumbered to their full value, and at the time he executed the conveyance to his daughters he was being pressed by complainant to adjust Stout's claim so that it might take the timber purchased from the Stout tract; that Stout was proceeding against Alexander to enforce his said vendor's lien.

The defendants' evidence further tended to show that the daughters to whom the lands were conveyed were school teachers; that they had made advances to their father through previous years; that these sums with cash paid subsequently constituted the consideration for said conveyance. The evidence further shows that there was no change in the possession and control of the land after the deed was made—Alexander remained in possession and continued to pay the taxes.

■ The appellants' contention, that only timber 10 inches in diameter and up, suitable for making cross-ties, was sold and conveyed, and therefore the complainant is liable for all trees under 10 inches cut and removed from the land, cannot be sustained. The language of the deed is: "I Jake Alexander, do grant, bargain, sell and convey unto the said Bond Brothers all of the merchantable timber, cedar excepted, situated on the following described land in Lawrence County, Alabama." There is no ambiguity in this description. " 'Merchantable timber' * * * as used in timber deeds or contracts has a certain, definite meaning ascertainable by rules of construction. Merchantability of timber is determined by the standard in use at the time the deed is executed in the absence of anything in the conveyance to show a contrary intention. It includes timber ordinarily used for sale or manufacture in the particular locality." 38 C.J. p. 160, § 36; Wright v. Bentley Lumber Co., 186 Ala. 616, 619, 65 So. 353; Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417.

While the evidence shows that complainant's principal business was manufacturing cross-ties, still it manufactured lumber as a by-product, and that timber of less than 10 inches at the stump was suitable for making lumber, and was merchantable for other purposes.

■ The appellants' next contention is that the complainant has failed to meet the burden of showing the quantity and value of the timber on the Stout tract on June 13, 1930—the date of the timber deed. This contention is also without merit. There was evidence sufficient to sustain the conclusion stated in the final decree in respect to the quantum of damages resulting from the breach of warranty.

■ The covenant against encumbrances is a covenant in praesenti, broken as soon as made if there is an outstanding prior encumbrance diminishing the value of the property. Colson v. Harden, 224 Ala. 665, 141 So. 639.

■ The existence of a vendor's lien constitutes a breach of the covenant (Thomas v. St. Paul's M. E. Church, 86 Ala. 138, 5 So. 508), and when the covenant was breached the grantee in the conveyance became a contract creditor of the grantor (Bibb, Adm'x v. Freeman et al., 59 Ala. 612; Cowan, Trustee v. Staggs et al., 178 Ala. 144, 59 So. 153). And the statute authorizes such creditor to maintain a bill in equity "to subject to the payment of his debt, any property which has been fraudulently transferred or conveyed, or attempted to be fraudulently transferred or conveyed by his debtor." Code 1923, § 7342; Dickinson et al. v. National Bank of Republic, 98 Ala. 546, 14 So. 550; Douglass Cotton Oil Co. et al. v. Alabama Machinery & Supply Co. et. al., 205 Ala. 51, 87 So. 342.

The appellants' next and last contention is, that Alexander had the right to give his daughters a preference over other creditors in the disposition of his property. That is true, if there was a bona fide indebtedness due from him to them and there was an actual sale made by such debtor, at a fair and reasonable price. "The fraud which vitiates a sale by an insolvent debtor to a preferred creditor, is unlike that of a sale for a new consideration paid. It is an attack upon the sale itself, as an actual transfer of the property and its title, or upon the sufficiency or bona fides of the consideration. Simulation, secret trust—these are the defects which usually avoid sales made, or pretended to be made, by a debtor in failing circumstances, to a preferred creditor." Crawford et al. v. Kirksey et al., 55 Ala. 282, 293, 28 Am.Rep. 704; Robinett et ux. v. Murray, 219 Ala. 176, 177, 121 So. 535.

The evidence shows that such is the taint of the conveyance attacked by the bill in this case. Cooper v. Davison, 86 Ala. 367, 5 So. 650.

■ The defendants had the burden of showing that there was in fact a real sale and conveyance for a fair and adequate consideration. R. W. Allen & Co. v. Sands et al., 216 Ala. 106, 112 So. 528; Robinett et ux. v. Murray, supra.

■ The judgment here is that appellants have failed to meet and carry this burden;

that in addition to the evidence going to show that Alexander retained a secret trust in said property, the evidence as to the consideration paid is affected, to say the least, with glaring infirmities that destroyed its probative force.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.